# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LYNNE BUELL,

    Plaintiff,

    v.                                     Case No. 09-C-0217

WAUWATOSA SCHOOL DISTRICT,

    Defendants.

## DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Lynne Buell, filed this action on March 2, 2009, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 623(a)(1). The plaintiff alleges that she was treated less favorably throughout her employment with the defendant and ultimately was discharged based upon her age and sex.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391(b) and (c). The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 3 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General Local Rule 73 (E.D. Wis.).

On December 15, 2009, the defendant, Wauwatosa School District (District), filed a motion for summary judgment. (Docket # 29). This motion is fully briefed and will be addressed herein.

## **MOTIONS FOR SUMMARY JUDGMENT**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant.

In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 248; see also, Celotex Corp., 477 U.S. at 324; Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added). Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing

Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]).

## Relevant Undisputed Facts[1]

The plaintiff, Lynne Buell, began her employment with the Wauwatosa School District (District) in 1991. She was born in 1953 and was 53 years old at the time of her termination in 2006. Her final day with the District was June 30, 2006. At the time of her termination, the plaintiff was the oldest Computer Support Specialist in the District, the only female Computer Support Specialist, and the Computer Support Specialist who had the longest tenure with the District.

During the time the plaintiff was employed by the District, she had several different positions. From 1991 to 1994, the plaintiff was a Media Technical Assistant. From 1994 until 2003, she was a Computer Support Specialist. In 2003, her position was changed to Technology Integration Specialist. It is unclear when the plaintiff's formal job title was changed again to Computer Support Specialist.

In 2005, the District eliminated the Technology Integration Specialist position. At this point, the plaintiff performed some of the job duties and responsibilities of a Computer Support Specialist, but also had different duties and responsibilities from other Computer Support Specialists. She spent 75% of her time at the Help Desk and the remaining 25% of her time was spent on other tasks such as supporting the district's video and smart board installations, video integration, web developments and some training sessions. One of the duties of a Computer Support Specialist was telephone support of network/stand–alone/midrange computer

---

[1] As a general matter, unless accompanied by citation, the relevant facts are taken from the parties' proposed findings of fact which are not disputed. Citations to sources of quoted excerpts have been included, even when those excerpts are undisputed.

applications. Another duty of a Computer Support Specialist was to assist district staff in the use, training, and support of computer-related hardware that was utilized by district personnel.

When the Technology Integration Specialist position was eliminated, the plaintiff asked her supervisor, LuAnn Zielinski, to change her title to Computer Support Specialist. Ms. Zielinski requested that the plaintiff's title and description match and that they both be Computer Support Specialist. The plaintiff continued to perform some of the duties of a Computer Support Specialist, but she did not physically go out to the buildings on a day-to-day basis.

The plaintiff consistently did good work for the District and received positive evaluations. She always met expectations and later in her career exceeded expectations. In the years 1998, 1999, 2000 and 2002 the plaintiff received "meets standards" for her overall performance appraisal. In 2004, she received "exceeds standards" for her overall performance appraisal. No one ever expressed to the plaintiff any problems with her skills, knowledge or attitude. The plaintiff received suggestions for growth, development and/or improvement on each of her performance reviews.

In 2005, the District hired an outside consulting firm, Hartland Business Systems, to review the staffing structures and the use of technology in its Technology Department. Jamie Price was the consultant Hartland provided to the District. Mr. Price was on site at the District two or three days total per week. The rest of his time was occupied with his other clients.

As part of Mr. Price's work, he looked at the current roles and responsibilities and evaluated the skill sets of every employee in the Technology Department. In order to assess the employees' skill sets, he observed them in their daily roles performing their tasks. This included reviewing and making personal observations of their work product. He did not take any notes during his observations or during one-on-one interviews with the employees.

Mr. Price's office was near the Help Desk and he could see the plaintiff at the Help Desk when he entered and left the office, though he could not see her or observe her work when he was sitting in his office. Mr. Price also was able to observe the other employees when they were working at the Help Desk.

In his observation of the plaintiff, Mr. Price saw that she spent the first half to three-quarters of her day answering the telephone and receiving Help Desk calls. The remainder of her job was doing tasks given to her by other members of the Technology Department. Mr. Price estimated that the plaintiff failed to resolve 98% of the Help Desk requests that came in. He observed that she was performing more in a secretarial role of taking phone calls and logging them into the system without actually resolving them. He also observed that the plaintiff spent a lot of time browsing the internet or talking on the phone with other employees about personal situations, not work related items. For example, he observed her browsing home gardening websites on a number of occasions. Based upon Mr. Price's observations and evaluation, he concluded that the plaintiff's skill sets were at the lower end of the spectrum for the department.

The plaintiff "went and talked to [Mr. Price] because I had been noticing that he had been talking to all of the other Computer Support Specialists . . . so I took it upon myself to talk to him directly . . . and we talked about it at that point." (Deposition of Ms. Lynne Buell [Buell Dep.] at 60). It took Mr. Price about two weeks to set up and conduct interviews with employees in the Technology Department. When he spoke to the plaintiff, Mr. Price asked her what her interests and strengths were.

The plaintiff informed Mr. Price that she was particularly interested in web development. She listed her strengths as her experience, citing her many years in technology support. Mr.

Price did not indicate that there was any problem with any of the information she provided to him.

In 2006, the District decided to reduce its budget by $500,000.00. In order to accomplish this reduction, the District decided to reduce its staff. Mr. Price informed Phillip Ertl, the Superintendent of Schools, and Susan Drinkwine, the Student Learning Director, that it was his opinion that the plaintiff had a lower skill set and a lesser amount of self-motivation than other employees. Mr. Price recommended to Dr. Ertl that it was not necessary to have a person sitting in an office answering the Help Desk calls and recommended that the District get an automated Help Desk. Mr. Price did not recommend that the plaintiff be terminated. The decision to terminate the plaintiff was made by Dr. Ertl. Since this decision to eliminate the plaintiff's position, the District has not hired any new computer support specialist personnel.

In May of 2006, in a meeting with Dr. Ertl, Ms. Drinkwine, and Scott Lawrence, the Human Resources Director, the plaintiff was informed of her termination. The plaintiff was informed that the reason for her termination was that her services as a Technology Integration Specialist were no longer needed. The plaintiff informed Ms. Drinkwine that she was not working in that position anyway, and asked why she could not just work as a Computer Support Specialist. Ms. Drinkwine said there was no bumping allowed.

The plaintiff received a termination letter from the District dated May 12, 2006. The letter stated that her position as a Computer Support Specialist had been eliminated "due to budget constraints that the school district is facing for the 2006-07 school year and probably will face in the future." (Affidavit of Shannon MacDonald [MacDonald Aff.] ¶ 2, Exh. A).

The plaintiff was a Computer Support Specialist in 1994, and of the Computer Support Specialists employed in 2006, the next most senior started with the District in 1994. Steve Mutzenbaur was born in 1976, and was 30 years old in 2006. Jim Binney was born in 1978, and

was 28 years old in 2006. Jeremy Wendling was born in 1981 and was 25 years old in 2006. Mr. Mutzenbaur, Mr. Binney, and Mr. Wendling were not terminated by the District in 2006.

Rico Hernandez, who was born in 1956, was 50 years old in 2006, and was not terminated by the District in 2006. He had a bachelor's degree in Individual Studies/Communications and an associate's degree in Visual Communications/Computer Graphics. Tim Patten, who was born in 1967, was 39 years old in 2006. He had a bachelor of science degree with a major in Communications - Radio, TV, Film and he was not terminated by the District in 2006. As of January 2010, Mr. Patten and Mr. Hernandez were still employed by the District.

Shortly after her termination, the plaintiff requested her personnel file. On November 8, 2006, she filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). On December 20, 2006, the District submitted its position statement in the matter. This position statement stated that the reason for the plaintiff's termination was "budgetary constraints" and her lack of seniority as "she had only been working under the Computer Support Specialist I job title for under a year. All of the other computer support specialists had been in the department longer than her." (Deposition of Luann Zielinski [Zielinski Dep.] Exh. 13).

Attached to this position statement as Exhibit E was a memorandum authored by Scott Lawrence on October 19, 2005, which was sent to the plaintiff, Ms. Zielinski and others. This memorandum confirmed the plaintiff's title change from Technology Integration Specialist to Computer Support Specialist.

This memorandum is the same document as Exhibit 9 of Ms. Zielinski's deposition. Ms. Zielinski did not remember seeing this document before her deposition. The plaintiff did not remember seeing this document before she filed her complaint with the EEOC. The plaintiff

testified that she has no direct evidence that the defendant's proffered, legitimate, non-discriminatory reason was pretextual.

## **ANALYSIS**

Title VII of the United States Code makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .." 42 U.S.C. § 2000e-2(a)(1).

The Age Discrimination in Employment Act (ADEA) provides:

> It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1).

The standard for proving discrimination under both Title VII and the ADEA are the same. See Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002). A plaintiff seeking to prove discrimination under Title VII or the ADEA may do so by using either the "direct method" or the "indirect method." See Rhodes v. Ill. Dept. of Transp., 359 F.3d 498, 504 (7th Cir. 2004); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir. 1994). Direct proof of discrimination consists of "evidence that 'in and of itself suggests' that someone with managerial authority was 'animated by an illegal employment criterion.'" Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 670 (7th Cir. 2000)(quoting Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 [7th Cir. 1999]). Such evidence may be direct or circumstantial. Rhodes, 359 F.3d at 504.

The indirect method requires that the plaintiff apply the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04

- 8 -

(1973) and Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). To establish a prima facie case of discrimination under this framework, the plaintiff must demonstrate by a preponderance of the evidence that: "1) she is a member of the protected class;[2] 2) at the time of termination, she was meeting her employer's legitimate expectations; 3) in spite of meeting the legitimate employment expectations of her employer, she suffered an adverse employment action; and 4) she was treated less favorably than similarly situated male or younger employees." Peele, 288 F.3d at 326.

When a claim of discrimination arises from a reduction-in-force, the plaintiff must show that the other employees were similarly situated in terms of qualifications and experience. Thus, if the plaintiff lacks qualifications that the other employees possessed, these other employees are not similarly situated to the plaintiff. Fisher v. Wayne Dalton Corp., 139 F.3d 1137, 1141 (7th Cir. 1998). If the plaintiff is able to establish a prima facie case, there is a rebuttable presumption of discrimination. Anderson, 13 F.3d at 1122.

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to offer a "legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802; Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 572 (7th Cir. 1998). The employer's burden is only a burden of production. LaMontagne v. Am. Convenience Prod., Inc., 750 F.2d 1405, 1409 (7th Cir. 1984) (citing Burdine, 450 U.S. at 253-56). The reason does not need to be a good reason; it only needs to be nondiscriminatory and need only explain why the employment action was taken. See Timm v. Mead Corp., 32 F.3d 273, 275 (7th Cir. 1994).

If the defendant employer is able to offer a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff who must offer evidence that

---

[2] Sex is a protected class under Title VII. 42 U.S.C. § 2000-e2(a)(1). Under the ADEA, the protected class is defined as "[i]ndividuals who are at least 40 years of age." 29 U.S.C. § 631(a).

- 9 -

the reason is only pretextual. See Fairchild, 147 F.3d at 572; Taylor v. Canteen Corp., 69 F.3d 773, 780 (7th Cir. 1995) (citing Roper v. Peabody Coal Co., 47 F.3d 925, 926 [7th Cir. 1995]). "A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." Wells v. Unisource Worldwide, Inc., 289 F.3d 1001, 1006 (7th Cir. 2002) (quoting Grube v. Lau Indus., Inc., 257 F.3d 723, 730 [7th Cir. 2001] [internal quotations omitted]). To establish pretext "a plaintiff must demonstrate that an employer's proffered explanation for an employment decision is a dishonest explanation, rather than merely an error." Wells, 289 F.3d at 1006 (citing Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 [7th Cir. 2000]); Cianci v. Pettibone Corp., 152 f.2d 723, 727 (7th Cir. 1998) (It is not sufficient to show that the decision was unwise, incorrect, or unfair. Rather, the plaintiff must show that the defendant "fabricated its reason for terminating her."). To show pretext in a discrimination claim arising out of a reduction in force, the plaintiff must show that an improper motive "tipped the balance" in favor of her discharge. Testerman v. EDS Tech. Prod. Corp., 98 F.3d 297, 303-304 (7th Cir. 1996).

In moving for summary judgment, the defendant maintains that there are no genuine disputes of material fact. Further, the defendant contends that the plaintiff has not established a prima facie case of discrimination because she has not demonstrated that similarly situated employees were treated more favorably than she was. In addition, the defendant asserts that the plaintiff cannot show that the defendant's legitimate, non-discriminatory reason for discharging her – budget constraints necessitating a reduction in force – was pretextual. Finally, the defendant contends that the only basis for the plaintiff's belief that she was discriminated against is the fact that the employees who were retained were younger and male, which the defendant states is insufficient as a matter of law.

The plaintiff asserts that summary judgment is inappropriate because there are disputes of material fact and that she has established a prima facie case of sex and age discrimination. The plaintiff also asserts that the defendant's proffered reason for her termination was pretextual.

In support, the plaintiff states that the defendant has offered the following reasons for her termination: (1) that she had been a Computer Support Specialist for only one year at the time of her termination while others had been in the position longer, (2) that she had a lower skill set than the other Computer Support Specialists and lacked self motivation, and (3) that her services as a Technology Integration Specialist were no longer needed. The plaintiff asserts that each reason is either untrue or not credible because it contradicts another proffered reason. Specifically, the plaintiff responds that she was not the least senior Computer Support Specialist, that she did not have the lowest skill set in the department or lack motivation, and that she was not a Technology Integration Specialist at the time of her termination. The plaintiff also asserts that the defendant is liable for the discriminatory motive of Mr. Price under the "cat's paw theory," stating that Mr. Price improperly influenced Dr. Ertl's decision to terminate her.

The plaintiff uses the burden-shifting analysis of McDonnell Douglas to assert her claims of discrimination. The undisputed facts establish and the defendant does not deny that the plaintiff is protected under Title VII and the ADEA, that she was meeting the defendant's legitimate expectations, and that she suffered an adverse employment action. Therefore, the only element of the plaintiff's prima facie showing of discrimination which is in dispute is whether she was treated less favorably than similarly situated male and/or younger employees.

The undisputed facts show that Computer Support Specialists assisted staff in the use, training, and support of computer-related hardware. They also supported network/stand–alone/midrange computer applications. The plaintiff performed some of these

duties, though which duties she performed are not specifically delineated. However, it is undisputed that she did not perform all of them. For example, the plaintiff did not physically go out to the buildings on a day-to-day basis. In addition, the plaintiff spent 75% of her time answering Help Desk calls, with only 25% of her time spent on other tasks. Given the differences in the plaintiff's work duties and responsibilities as compared to the other Computer Support Specialists, the undisputed facts demonstrate that the other Computer Support Specialists were not similarly situated to the plaintiff. Thus, this court finds that the plaintiff has failed to establish a prima facie case of discrimination based on either sex or age.

Even if the plaintiff could establish a prima facie case, she then would have to demonstrate that the defendant's proffered reason for her termination was pretextual. It is undisputed that in 2006, the defendant decided to reduce its budget by $500,000.000 and to reduce staff as a means of accomplishing this objective. Although the plaintiff asserts that the defendant has offered a variety of conflicting reasons for her termination, the defendant consistently cited budgetary constraints as a reason. The termination letter to the plaintiff stated that her position as a Computer Support Specialist had been eliminated "due to budget constraints that the school district is facing for the 2006-07 school year and probably will face in the future." (MacDonald Aff. ¶ 2, Exh. A). The defendant's position statement to the EEOC stated that the plaintiff was terminated due to "budgetary constraints" and her lack of seniority as "she had only been working under the Computer Support Specialist I job title for under a year," while the other Computer Support Specialists had been in the position longer than that. (Zielinski Dep. Exh. 13). The fact that the defendant also offered other reasons in support of its decision does not undermine its overarching reason of budgetary constraints.

The plaintiff makes much of the discrepancy between her termination meeting – where she was called a Technology Integration Specialist – and her termination letter, which stated that

she was a Computer Support Specialist. However, the fact that the plaintiff's exact title was unclear does not rise to the level of demonstrating pretext. This is especially true in this case, because it is undisputed that the plaintiff performed some, but not all of the duties of her job title.

The plaintiff also maintains that she was not the least senior Computer Support Specialist at the time of her termination. The plaintiff previously had worked as a Computer Support Specialist, but there were a number of years in which she held different roles before resuming that job title again. It is unclear when the plaintiff's job title was changed back to Computer Support Specialist. However, the evidence also does not establish when the other Computer Support Specialists began working in that particular position. Given the lack of comparatives, this court cannot determine whether the plaintiff was or was not the least senior person in the position even if the exact date of her title change was known.

Nonetheless, whether the plaintiff was the least senior person or not is irrelevant because the plaintiff must "demonstrate that an employer's proffered explanation is a dishonest explanation, rather than merely an error." Wells, 289 F.3d at 1006. Although the plaintiff contends that the defendant fabricated the October, 2005, memorandum regarding the change of her title, she has not submitted any evidence to support this contention. The plaintiff merely submits that because she and Ms. Zielinski did not recall seeing this memorandum, the defendant must have fabricated it. However, this contention simply is not sufficient to establish that the memorandum was fabricated and does not constitute a showing of pretext.

The plaintiff contends that she did not have the lowest skill set or level of motivation in the Technology Department. The plaintiff's performance evaluations show that she met standards some years and exceeded them in others. No one ever told the plaintiff about any problems with her skills, knowledge, or attitude, but she was given suggestions for growth, development, and/or improvement on each evaluation. It is undisputed that Mr. Price observed

and evaluated everyone in the Technology Department. He estimated that the plaintiff spent the first half to three-quarters of her day answering Help Desk calls with the remainder of her time spent doing tasks given to her by other members of the Technology Department. Mr. Price estimated that the plaintiff failed to resolve 98% of the Help Desk calls that she answered and observed that the plaintiff was acting more in a secretarial role by taking calls and logging them into the Help Desk system. He further observed that the plaintiff spent considerable time talking with co-workers on the telephone about personal issues and browsing the internet while she was at the Help Desk. Furthermore, even if Mr. Price's assessment of the plaintiff was mistaken or unfair, the plaintiff must show that the defendant's proffered reason was dishonest, not merely a mistake. See Wells, 289 F.3d at 1006.

Finally, the plaintiff maintains that the defendant is liable for sex and age discrimination under the "cat's paw theory," which imputes another's improper motives to a defendant when that other person exerts significant influence over the employment conditions of the plaintiff. See Byrd v. Ill. Dept. of Public Health, 423 F.3d 696, 709 (7th Cir. 2005). The plaintiff basically asserts that Mr. Price's improper motives should be imputed to the defendant because he influenced the defendant's decision to terminate her. However, the undisputed facts clearly establish that Mr. Price did not recommend that the plaintiff be terminated. Furthermore, the record is devoid of any facts to suggest that Mr. Price's assessment of the plaintiff was motivated by age or sex. Therefore, the "cat's paw" theory is inapplicable to this case. Accordingly, even if the court were to find that the plaintiff had established a prima facie case of discrimination, she has not met her burden of showing that the defendant's legitimate, non-discriminatory reason for her termination is pretextual.

In sum, The plaintiff has not established a prima facie case of discrimination based on either her age or her sex. Even if the court were to conclude that she had made this necessary

showing, the plaintiff has not shown that the defendant's reason for her termination was based on pretext. Accordingly, for the reasons stated herein, the defendant's motion for summary judgment will be granted.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **granted**. (Docket # 29).

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2010.

                                       BY THE COURT:

                                       s/Patricia J. Gorence
                                       Patricia J. Gorence
                                       United States Magistrate Judge